UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AVION SIMBLER,

Plaintiff,

v. Case No. 26-cv-1903-bhl

AYITE MENSAH, CO OCONN,
SGT CLOUD, CAPTAIN ROGGE,
JOHN DOES 1-3, CO PENDELL,
CO WILLIQUETTE, CO NGENE, and
CAPTAIN ROZMARYNOWSKI,

Defendants.

---

**SCREENING ORDER**

---

Plaintiff Avion Simbler, who is currently serving a state prison sentence at the Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Simbler's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE**

Simbler has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Simbler has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $11.48. Simbler motion for leave to proceed without prepaying the filing fee will be granted.

**SCREENING OF THE COMPLAINT**

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Simbler alleges that on July 29, 2026, Captain Rozmarynowski moved him from a regular cell in the restricted housing unit to a "hard cell."[1] The cell did not have an emergency call button, but there was a camera with a video feed that was allegedly monitored by an officer. Simbler asserts that Rozmarynowski moved him to the hard cell in retaliation for him filing inmate complaints about staff's response to a prior self-harm incident. He also states that she was aware that he had self-harmed three times in the prior ten days.

According to Simbler, later that day, between 10 p.m. and 11 p.m., he began to cut himself with a piece of metal. Because there was no emergency call button, he was unable to call for help, but he stood within view of the camera to try and get help from the officer monitoring the video

[1] Apart from no emergency call button, Simbler does not describe the features of a "hard cell."

feed. Simbler asserts that the person in the cell next to his eventually used his call button to inform staff that Simbler was harming himself. Officer Ruiz came to Simbler's cell, and Simbler allegedly cut himself in front of her. He states that he was taken to the health services unit and was bandaged. He was then taken to a strip cell pending movement to observation status. Simbler asserts that Sgt. Cloud did not properly search him, which enabled him to hide sharp objects on his person. Simbler was then placed back in his cell with a constant observation order.

According to Simbler, CO Oconn stood at his cell-front, and at about midnight, Simbler began to cut himself. He states that he showed Oconn his wound and continued to cut himself. According to Simbler, Captain Cloud and Captain Rogge did not allow Simbler to see health services right away, which increased his risk of infection and prolonged his pain. Simbler also asserts that Captain Rogge did not inform psychological services that he had cut himself again. Simbler was allegedly taken off of constant observation status about seven hours later.

The next day, on July 30, 2026, at about 9 p.m., Simbler alerted staff that he wanted to harm himself again. He states that he was pulled out of his cell pending placement in observation status. Simbler asserts that hours later, at about midnight, he began to cut himself. He states that Sgt. Cloud had placed him in a camera cell with no emergency call button. According to Simbler, he harmed himself in view of the camera, but the officer who was supposed to be observing the video feed did not respond. Simbler also asserts that Officer Ayite Mensah failed to conduct his fifteen-minute checks or to look into his cell to confirm he was safe.

Days later, on August 5 and 6, 2026, Simbler allegedly informed CO Pendell during his rounds that he felt an urge to harm himself. Simbler asserts that CO Pendell walked by. Shortly thereafter, Simbler allegedly stopped CO Williquette and informed him that he had an urge to harm himself. CO Williquette allegedly told Simbler there were no observation cells available and walked away. Simbler asserts that he again informed CO Pendell that he wanted to self-harm, and CO Pendell again walked by. Simbler alleges that he then began to cut his arm. An officer eventually noticed the blood, and Simbler was taken to the health services unit where he was given steri-strips for his injury. According to Simbler, the nurse commented that his cuts were "pretty bad."

Simbler was then placed on constant observation. The next day he was taken off of constant observation and was observed every fifteen minutes. He states that he informed CO Ngene that he wanted to self-harm, but he never reported Simbler's threats to a supervisor. Simbler

asserts that he began to cut his arm. He states that the officer in the bubble did not check on him even though he was cutting in view of the camera. During rounds, an officer allegedly saw Simbler's injury, and Simbler received treatment in the health services unit.

**THE COURT'S ANALYSIS**

Before turning to Simbler's allegations, the Court notes that Simbler has improperly joined claims against different sets of Defendants in the same case. *See* Fed. R. Civ. P. 20. According to Simbler, over the course of about a week, he engaged in several distinct episodes of self-harm. The episodes occurred on different days and involved different sets of Defendants. Unrelated claims against different sets of Defendants must be brought in separate cases. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). This decision will focus on Simbler's allegations that on August 5 and 6, 2026, CO Pendell and CO Williquette ignored or dismissed Simbler's statements that he wanted to harm himself, after which he cut himself "pretty bad." Accordingly, pursuant to Fed. R. Civ. P. 21, the Court will "drop" Ayite Mensah, CO Oconn, Sgt. Cloud, Captain Rogge, John Doe 1-3, CO Ngene, and Captain Rozmarynowski because Simbler's claims against them are unrelated to his claims against CO Pendell and CO Williquette and therefore are not properly joined in this case. If Simbler wants to pursue claims against the dropped Defendants, he must do so in separate cases. Simbler is reminded that he will be required to pay the filing fee for every case he files.[2]

Prison officials violate the Eighth Amendment if they are aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregard it. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Notwithstanding the fact that deliberately causing harm to oneself would normally constitute a superseding or intervening cause of injury, *see Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882, 888–89, 900 (E.D. Wis. 2006), the duty imposed on prison officials extends to protecting inmates from imminent threats of serious self-harm, and the "obligation to intervene covers self-destructive behaviors up to and including suicide." *Miranda v. Cnty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018).

In *Freeman v. Berge*, the Seventh Circuit held that prison officials must prevent prisoners who have "given way to the [psychological] strain" of incarceration from seriously injuring or

[2] Simbler currently owes the filing fee for four different cases, which means that 80% of the deposits into his prison trust account will be deducted each month until he satisfies the debt. If Simbler files another case, he is advised that 100% of the deposits into his trust account will be deducted until his debt is satisfied. For the reasons explained at the end of this decision, the Court will not allow Simbler to use funds in his release account to satisfy his filing fee debt.

killing themselves. 441 F.3d 543, 547 (7th Cir. 2006). *Freeman* was careful, however, to distinguish between allowing suffering as punishment and allowing suffering as a self-inflicted consequence of bad behavior. "The former is prohibited by the Constitution; the latter is a valuable teaching tool." *Hewlett v. Beilke*, No. 25-C-375, 2026 WL 3083827, at *6 (E.D. Wis. Oct. 15, 2026). For example, a mother who refuses to give into her child's demands even as he goes red in the face from holding his breath, teaches her child that no means no and that she cannot be manipulated by his antics. *Id.* To require prison officials to intervene to prevent *all* threats of self-harm would seem to deprive officials of this valuable teaching tool and to empower prisoners to undermine prison discipline and disrupt an otherwise orderly environment simply by threatening to inflict uncomfortable, though non-life-threatening, injuries upon themselves. *Id.* (citing *Freeman*, 441 F.3d at 546-47).

*Freeman* stresses that, at some point, prison officials must step in to prevent a prisoner from endangering his own life or health. But when there is no indication that a prisoner's life or health is in serious jeopardy, then prison officials do not violate the Constitution when they allow a prisoner to endure the suffering, discomfort, or temporary detrimental consequences that he rationally chooses to inflict upon himself. *Id.* at 547 (affirming summary judgment in favor of prison officials because the prisoner's food deprivation was "self-inflicted" and there was no evidence that he experienced "real suffering, extreme discomfort, or any lasting detrimental health consequences"); *see also Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (holding that self-inflicted injuries consisting of scratches "easily treated with a gauze bandage" are not a recoverable injury).

Although Simbler's allegations suggest that his life or health was never in serious jeopardy or that he experienced a cognizable harm, construing Simbler's allegations broadly and drawing all reasonable inferences in his favor, the Court will allow him to proceed on an Eighth Amendment claim against CO Pendell and CO Williquette based on allegations that they ignored or downplayed Simbler's statements that he felt an urge to harm himself, after which he cut his arm.

Finally, the Court will deny Simbler's request that he be permitted to pay the remainder of the filing fee using funds in his release account. The Prison Litigation Reform Act requires courts to collect filing fees from a "prisoner's account." 28 U.S.C. §1915(b). Wisconsin prisoners have two types of accounts, a regular account and a release account. *Spence v. McCaughtry*, 46 F. Supp.

2d 861, 862 (E.D. Wis. 1999). "A release account is a restricted account maintained by the Wisconsin Department of Corrections to be used upon the prisoner's release from custody upon completion of his sentence." *Wilson v. Anderson*, Case No. 14-C-798, 2014 WL 3671878, at *3 (E.D. Wis. July 23, 2014) (citing Wis. Admin. Code § DOC 309.466). Given the purpose of the release account, federal courts do not focus on that account as the source of funds to satisfy the filing fee payment requirements. *See Smith v. Huibregtse*, 151 F. Supp. 2d 1040, 1042 (E.D. Wis. 2001). Although federal courts will sometimes allow a plaintiff to pay the initial partial filing fee with funds in his release account, federal courts are less willing to allow a plaintiff to pay the full filing fee from that account. Allowing this practice would significantly deplete the value of the prisoner's release account, thereby undermining the very purpose of the account. Accordingly, Simbler will be required to pay the remainder of the filing fee through monthly deductions from his regular account in accordance with §1915(b)(2).

**IT IS THEREFORE ORDERED** that Simbler's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Ayite Mendah, CO Oconn, Sgt. Cloud, Captain Rogge, John Doe 1-3, CO Ngene, and Captain Rosmarynowski are not properly joined in this case, so pursuant to Fed. R. Civ. P. 21, the Court "drops" them as Defendants. The clerk's office is directed to terminate them from this case.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Simbler's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on CO Pendell and CO Williquette.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, CO Pendell and CO Williquette shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Simbler is located.

**IT IS FURTHER ORDERED** that the agency having custody of Simbler shall collect from his institution trust account the $338.52 balance of the filing fee by collecting monthly payments from Simbler's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each

time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Simbler is transferred to another institution, the transferring institution shall forward a copy of this Order along with Simbler's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Simbler is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 24th day of November, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
Chief United States District Judge